```
 1            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
 2

 3  UNITED STATES OF AMERICA     )    CASE NO. 1:13CR337-1
                                 )             1:14CR4-1
 4          vs.                  )
                                 )    Winston-Salem, North Carolina
 5  IDER VAZQUEZ MATOS           )    June 12, 2014
    _____      )    2:58 P.M.
 6

 7

 8              TRANSCRIPT OF THE **SENTENCING HEARING**
             BEFORE THE HONORABLE THOMAS D. SCHROEDER
 9                UNITED STATES DISTRICT JUDGE

10

11  APPEARANCES:

12  For the Government:        SANDRA HAIRSTON, AUSA
                               Office of the U.S. Attorney
13                             101 S. Edgeworth Street, 4th Floor
                               Greensboro, North Carolina 27401
14

15  For the Defendant:         ROBERT A. BROADIE, ESQ.
                               CAROLINA LEGAL SOLUTIONS
16                             2807 Earlham Place
                               High Point, North Carolina 27263
17

18  Court Reporter:            BRIANA NESBIT, RPR
                               Official Court Reporter
19                             P.O. Box 20991
                               Winston-Salem, North Carolina 27120
20

21  Interpreter:               DR. ERNEST LUNSFORD

22

23

24         Proceedings recorded by mechanical stenotype reporter.
25       Transcript produced by computer-aided transcription.
```

1                                    INDEX

2

3    **GOVERNMENT'S WITNESSES:**                              **PAGE:**

4

5    DEA SPECIAL AGENT JAMES P. HUGHES:

6        Direct Examination by Ms. Hairston          11
         Cross-Examination by Mr. Broadie            14
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

         USA v. Ider Matos  -- Sentencing  -- 6/12/2014

```
 1               P R O C E E D I N G S
 2        (The Defendant was present.)
 3             THE COURT:  Do you want to call the matter, please?
 4             MS. HAIRSTON:  Yes, sir.  United States of America
 5   versus Ider Vazquez Matos, Case Number 1:13CR337-1.  Mr. Matos
 6   is represented by Mr. Robert Broadie.
 7             THE COURT:  Let's go ahead and administer the oath to
 8   Dr. Lunsford.
 9        (The Interpreter was duly sworn.)
10             THE COURT:  All right.  Dr. Lunsford, good to have
11   you with us here today.
12             THE INTERPRETER:  Thank you, Your Honor.
13             THE COURT:  As I recall, where we left off is we had
14   the objection to the three-level enhancement for a manager or
15   supervisor under 3B1.1(b), and then you all had filed some
16   briefs as to what I should take into account, if anything, from
17   the presentence report and the evidence that's been presented.
18   I've read those materials.
19        Do you want to be heard any further in light of where I
20   am?
21             MS. HAIRSTON:  Not for the government, Your Honor.  I
22   would like to ask the Court's forgiveness for a typo.  On page
23   3, that should be December 18 is the date of Mr. Rangel
24   Canela's debriefing not the 19th.
25             THE COURT:  What document number?
```

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1          **MS. HAIRSTON:**  Document Number --

2          **THE COURT:**  -- 59?

3          **MS. HAIRSTON:**  Yes, sir, page 3, Your Honor.

4          **THE COURT:**  December 18.

5          **MS. HAIRSTON:**  Should be December 18 instead of 19,

6    Your Honor.  I'm sorry.

7          **THE COURT:**  All right.  That's fine.  Do you want to

8    be heard at all?

9          **MR. BROADIE:**  Good afternoon, Your Honor.  No, sir.

10         **THE COURT:**  All right.  I am a little surprised.  I

11   would have thought maybe each one of you might want to have

12   been heard a little more.

13       The evidence suggests that Mr. Matos was running cocaine

14   from California to North Carolina and taking cash back.  He had

15   a stash house where it was kept, and it was his house.  Others

16   lived there, it sounds like, and that at least one other

17   person, and it sounds like two actually, modified the house in

18   order to hide the drugs.  I think it was a Misael Vazquez, at

19   least according to one witness, and then Mr. Pina; and the

20   defendant's position is that these people acted more like

21   partners than they did anything else.

22       What am I to make of the fact that one of the two

23   co-defendants apparently, according to one of the

24   co-defendants, invested $30,000 of their own money in one of

25   the defendant's businesses?  What do I make of that?  The

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1  defendant says that's more of the kind of participation of a

2  partner as opposed to anything else.

3          MS. HAIRSTON:  Your Honor, as with a lot of these

4  drug conspiracy cases, if you are addressing it to me --

5          THE COURT:  Yes.  I want to hear from everybody

6  because I'm -- I still have an open mind as to what the answer

7  is on this.

8          MS. HAIRSTON:  I understand, Your Honor.  Your Honor,

9  as with a lot of these drug conspiracies, oftentimes roles

10  change with respect to people who start out maybe being

11  partners.  Someone else then has a source that allows that

12  person to then move into another role in the organization, and

13  that appears to be what happened here.  There was money

14  invested in the original -- well, legitimate business, for lack

15  of a better word, I think is what I think that cooperator

16  indicated, and then at some point he was invited into the drug

17  trafficking business.

18     It is a close call, Your Honor, and we understand that,

19  but we do believe that there are sufficient facts to support

20  the enhancement in the presentence report.

21          THE COURT:  Did Pina also have signing authority at

22  the bank?

23          MS. HAIRSTON:  Apparently, Your Honor.

24          THE COURT:  Is that true?  In other words, for

25  purposes of my hearing today, should I accept that as true

        USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1  because I am not sure the government contested that?  I thought

2  that one of the witnesses may have claimed that.

3          **MS. HAIRSTON:**  I believe Mr. Sabino Rangel Canela may

4  have said that he thought Mr. Francisco Garcia Pina had some

5  type of authority at the bank.  Is that what Your Honor is

6  referring to?

7          **THE COURT:**  Yes.

8          **MS. HAIRSTON:**  And according to -- and the agent

9  tells me, Your Honor -- and Agent Purgason did an extensive

10 financial investigation in this case, and he confirms that he

11 did have that authority, that signature authority.

12         **THE COURT:**  So what do I make of that?  Which way

13 does that cut?

14         **MS. HAIRSTON:**  It cuts in the defendant's favor, Your

15 Honor, quite frankly.  If he had just as much control over the

16 bank account as did Mr. Matos, I couldn't stand here and tell

17 you anything other than that.

18         **THE COURT:**  What do you contend are the facts that

19 would support the manager or supervisor here?

20         **MS. HAIRSTON:**  Your Honor, I think Mr. Garcia and

21 Mr. Rangel Canela both go back and forth in their debriefings,

22 and as the agent testified to at the last hearing, with facts

23 indicating that at some -- various points the defendant was, in

24 their opinion, directing them, or they were working for him in

25 the drug trafficking business; and I think those are the facts,

        USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1  Your Honor.

2      If those two witnesses were to come here and testify, they

3  would say exactly what -- almost exactly what is written in

4  those reports.  It's a matter of perspective.  From Mr. Matos'

5  perspective, they were partners and he wasn't directing them to

6  do anything.  Just because someone may have been told to go to

7  the bank or to do this or to do that, his argument is that

8  that's not a role -- that's not his supervisory role.

9      Our position is that somebody has to be in charge and that

10  he was directing activities.  He would send Mr. Rangel Canela

11  to the bank with money to deposit and deposits were made, and

12  that Mr. Garcia Pina indicated that while initially he made

13  that investment in the business, he was invited to participate

14  in moving merchandise and then became involved in the drug

15  trafficking business at the defendant's request and was not a

16  partner.  That's where we fall, Your Honor.

17          **THE COURT:**  Okay.  Thank you.  Do you want to be

18  heard any more?

19          **MR. BROADIE:**  I just wanted to articulate, Your

20  Honor, that the statements that the Court did point out were

21  also made by Garcia Pina himself in his own debriefing in

22  regards to his ability to have signature authority.

23      I think that in my brief I pointed out the essential

24  arguments of the defendant as far as what the Court should

25  consider and the misleading and contradictory statements of

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1 both of the individuals.

2        **THE COURT:** Okay. Let me ask Ms. Hairston. Do you

3 accept the notion that the defendant has properly contested

4 this issue, that is, by the way the defendant has brought the

5 issue forward and claimed that this information is unreliable

6 from Pina and Canella, that the issue is properly before me?

7 Do you follow my question?

8        **MS. HAIRSTON:** Yes, sir. I think given that the

9 Court can consider hearsay, then the defendant's argument is

10 that it is unreliable and the Court should not find that it is

11 reliable. Yes, my answer is, yes.

12        **THE COURT:** Okay. I think I agree, Ms. Hairston. I

13 think it is a very close call, and probably for that reason, if

14 no other, I am going to sustain the objection as to the

15 three-level enhancement.

16     On the one hand, I have some evidence that suggests that

17 the defendant is running the operation to some degree because

18 he's bringing the cocaine home, running it to the stash house,

19 and then others are allegedly at his direction changing the

20 stash house to make a place to store things.

21     There is also some other evidence that Mr. Canela says he

22 worked for Mr. Matos as a courier. There is some wiretap

23 evidence that I am not sure has been properly objected to, and

24 that's one of the reasons I asked Ms. Hairston whether the

25 issue is properly before me because there's been nothing to

    USA v. Ider Matos -- Sentencing -- 6/12/2014

show that the information of the wiretap is not appropriately
set forth in the presentence report.

Some of the wiretap information suggests that Mr. Matos
was in direct communication with Mr. Gutierrez, and that's more
consistent in some respect with the government's theory of the
thee-level enhancement.

On the other hand, I have Mr. Pina who has signing
authority on the bank accounts that were used, and I have
Mr. Pina investing a fair amount of money, $30,000, in the
business venture with the defendant.  Now, that may be a way to
fence the money, and it may be nothing more than that, but
that's a little inconsistent with the position of being a mere
employee or being managed by somebody.

So I think there are enough questions about the testimony
that it's hard for me to find by a preponderance that the
three-level enhancement ought to apply in this case.  It is a
close question, and I understand the government's predicament
it's in at this point because the individuals are not
available, but I am going to sustain the objection.

Any other objections to the presentence report?

**MR. BROADIE:**  I am trying to think if we covered
them.  The other one was one objection to the imposition of a
fine.  I don't think we covered that at the last session.  We
did object to the defendant's ability to pay the suggested fine
in the PSR.  We objected due to the nature that the assets that

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1 were listed in the presentence report had been seized by the

2 government, and I think those assets were primarily used as the

3 basis for the defendant's ability to pay a fine.  As such, we

4 would object to that portion of it, Your Honor.

5      **THE COURT:**  Hold on just a moment.  Okay.  I think

6 that's probably an issue as to imposition of sentence, and I am

7 going to treat it as that as opposed to an issue with respect

8 to the objection to the presentence report.

9      **MR. BROADIE:**  Your Honor, I may have been somewhat

10 presumptuous, but there was another objection in lieu of the

11 finding that the leadership enhancement is not applicable.  We

12 did object to a non-finding of the imposition of the safety

13 valve.  We would also argue that in the Court's finding that

14 the leadership enhancement was not applicable in this case that

15 my client should be eligible for the safety valve reduction.

16      **THE COURT:**  All right.  Ms. Hairston, do you want to

17 speak to that issue?

18      **MS. HAIRSTON:**  Yes, Your Honor.  Could I have just a

19 second?

20      **THE COURT:**  Yes, absolutely.

21     (Off-the-record discussion.)

22      **MS. HAIRSTON:**  Your Honor, I think that I need to

23 call Special Agent Hughes for the Court just to hear him very

24 briefly explain to the Court the government's position that the

25 fifth criteria under 5C1.2 may not have been met at this time

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1 by the defendant.

2          **THE COURT:**  All right.

3          **MS. HAIRSTON:**  I will call Special Agent James

4 Hughes, Your Honor.  Your Honor, could I just say for the

5 record, I am calling the agent being fully aware that the case

6 law requires -- states that the burden is on the defendant to

7 show that he has actually met all five criteria; but to move

8 things along, I thought I would just go ahead and call the

9 agent so the Court can hear from him.

10          **THE COURT:**  It's your call.  If you want to do that,

11 that's fine.

12          **MS. HAIRSTON:**  Yes, sir.

13 **DEA SPECIAL AGENT JAMES P. HUGHES,** GOVERNMENT'S WITNESS, at

14 3:14 p.m., being first duly sworn, testified as follows:

15                    DIRECT EXAMINATION

16 **BY MS. HAIRSTON**

17 Q    Would you state your name, please, sir.

18 A    Special Agent James Patrick Hughes.

19 Q    And, Agent Hughes, you are employed by the Drug

20 Enforcement Administration; is that correct?

21 A    That's correct, ma'am.

22 Q    In your capacity as a special agent with the DEA, have you

23 been involved in the investigation of Mr. Ider Vazquez Matos?

24 A    Yes, ma'am.

25 Q    Did you participate in debriefings with Mr. Matos after

       USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1   his arrest in this case?

2   A    Yes, ma'am.

3   Q    How many debriefings have you conducted with Mr. Matos?

4   A    Two, ma'am.

5   Q    During the course of those debriefings, did he provide to

6   you information regarding his involvement in this case and

7   information about other individuals involved in drug

8   trafficking?

9   A    Yes, ma'am, he did.

10  Q    To date, have you formed an opinion as to whether the

11  information provided to you by Mr. Matos has been completely

12  truthful regarding his involvement in this activity and the

13  involvement of others?

14  A    The key word would be "complete."  He didn't provide a

15  complete picture as to his involvement and other people he may

16  have been involved with.

17  Q    And could you be specific with the Court as to the

18  information that you find was lacking?

19  A    During the course of the interviews, Mr. Vazquez pointed

20  out the sources of supply that he worked with that's also --

21  that was part and parcel of the investigation.  Numbers for the

22  amount of cocaine between Mr. Garcia Pina and Mr. Vazquez

23  corresponded where -- my opinion is that his information was

24  not complete.

25       He was describing persons he was dealing with more

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1  recently in time.  This is the past couple of years prior to

2  his arrest.  He was attempting to describe persons that he was

3  in the process of initiating narcotics transactions with.  We

4  showed him features like Google Maps, and with it being more

5  recent in time, he had a terribly difficult time trying to

6  point out where he met these people at, in particular in

7  Southern California.

8       Again, that being more recent in time, I found it peculiar

9  why he just could not get that accomplished to at least give us

10 something as simple as an address or an area to begin looking

11 for these other parties.

12 Q    Was that the primary part -- between the two debriefings,

13 was that particular issue there the primary reason that you

14 formed the opinion that he had not provided complete

15 information?

16 A    Yes, ma'am.

17 Q    During the debriefings, he did provide you with the name

18 of a specific individual with whom he had dealt in California;

19 is that correct?

20 A    Correct.  And that individual also lived here in North

21 Carolina from time to time.

22 Q    And actually was moving back and forth between North

23 Carolina and California?

24 A    Correct, ma'am.

25 Q    All right.  Now, other than what you just stated to the

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1  Court, the defendant's inability to identify recent contact

2  with individuals in California with whom he dealt or to

3  identify addresses and locations, did you find anything else

4  during the two interviews you've conducted with him that, in

5  your opinion, were lacking in completeness or not being

6  complete in his information?

7  A    You always take the information when you are dealing with

8  a subject in Mr. Vazquez's predicament with a grain of salt.

9  It's that more recent contact that he was describing in

10 Southern California.  I felt it peculiar because here is the

11 opportunity he could provide.  Because it is more recent in

12 time, it would give us, law enforcement, an opportunity to

13 investigate something that would be to his credit, and he chose

14 not to consummate that deal.

15         **MS. HAIRSTON:**  All right, sir.  That's all I have,

16 Your Honor.  Thank you.

17         **THE COURT:**  Any cross?

18         **MR. BROADIE:**  Please.

19                   CROSS-EXAMINATION

20 **BY MR. BROADIE**

21 Q    Agent Hughes, when you say "consummate that deal," what do

22 you mean by that?

23 A    Provide that information, because if it was somebody that

24 we could identify and tie into either an existing investigation

25 or to launch an investigation in another office, that would

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1  certainly be made aware to both you, the defense counsel, the

2  prosecutor, and the Court.

3            **THE INTERPRETER:**  Could you repeat that, please?

4            **THE WITNESS:**  The information would afford us an

5  opportunity to follow up and investigate that person or persons

6  there in Southern California, and that information would be

7  known to certainly you, the defense counsel, the prosecutor,

8  and the Court.

9  **BY MR. BROADIE**

10  Q    In that debriefing, who brought up this individual in

11  California?

12  A    Mr. Vazquez did.

13  Q    And he brought it up because he was trying to tell you

14  where he met the people at; correct?

15  A    Correct.

16  Q    And he told you it was at a truck stop, correct -- or,

17  excuse, me a truck dealership; correct?

18  A    That was when we were talking about the other party, the

19  SOS, the source of supply, who he had described.

20  Q    And then he told you that he would sometimes go to one of

21  their family member's house, and it was their house that he was

22  trying to describe for you; correct?

23  A    We are talking about two different people at this point,

24  sir.

25  Q    Which connection in California are you referring to?

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1   A     He described in detail his relationship with Emilio

2   Banuelos.

3   Q     And he brought that individual name to your attention;

4   correct?

5   A     Correct.

6   Q     And you are saying that because he had a difficult time

7   locating the address on a Google map --

8   A     No, it's the additional parties that he was trying to

9   describe that more recently he had some con -- shared some

10  contact with his potential sources for narcotics.

11  Q     In California?

12  A     In California.

13  Q     So are you saying that there are people you were asking

14  him about that he refused to tell you about?

15  A     It was his description of the people, but then he could

16  not locate where they were in Southern California.  We spent

17  some time and gave him the opportunity to pinpoint or at least

18  locate it, but we -- once we got down to him looking at a

19  tablet and trying to point it out, he just couldn't find it.

20  Q     It was his suggestion that someone get a tablet and get

21  the Google map; correct?

22  A     Correct.

23  Q     So wouldn't you say that he actually tried?

24  A     He was giving us something, but he didn't finish locating

25  where that person was.

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1  Q    But is there any reason that you have that he knew where

2  the individual was and just refused to tell you?

3  A    My belief is he's mentioning that there is other people

4  out there that he had recently shared contact with.  He gives

5  us something, okay, this is to Mr. Vazquez' credit, but while

6  he is looking for it, suddenly he can't find it, and it's more

7  recent in time.  As a truck driver, I thought that was -- I

8  think he would have been able to find it if he had brought it

9  up.

10  Q    How long in totality had you debriefed Mr. Vazquez?

11  A    I would have to consult back to both of those debriefings.

12  There is a start time and a finish time.

13  Q    Would it be safe to say that you participated in over nine

14  hours' worth of debriefings?

15  A    That figure may -- eight hours, nine hours.

16  Q    And out of the nine hours, this is the only incident that

17  you think -- that you can mention to this Court that you feel

18  he was being incomplete?

19  A    I believe that's the -- for me, that's the major thing

20  that I felt was incomplete about his information.

21  Q    Were you -- do you remember the interview -- the last

22  interview with Mr. Vazquez in which he mentioned finding a GPS

23  device on his vehicle?  Were you present at that debriefing?

24  A    Yes.

25  Q    Did he mention to you that -- or to the individuals in

1  that debriefing that he found that GPS device?

2  A    I recall him saying he did find it.

3  Q    Did he tell you all what he planned to do with that GPS

4  device?  Did he tell you where that GPS device was?

5  A    He agreed to return it to us; correct.

6  Q    Do you remember when that GPS device was actually placed

7  on his vehicle?

8  A    I wasn't involved in the investigation when it was, sir.

9  Q    So would it be safe to say it was over several years ago?

10 A    Yes, sir.

11 Q    Did he have that GPS device returned to law enforcement

12 officers?

13 A    I don't believe that's happened yet, sir.

14 Q    Do you know if he voluntarily agreed to have his personal

15 cell phone shipped to North Carolina for agents to go through

16 it and have another debriefing about individuals who were in

17 his cell phone?

18 A    I don't recall that conversation, no, sir.

19 Q    Do you know -- were you at the debriefing where he

20 volunteered to have the keys sent to North Carolina for the

21 house in Liberty?

22 A    Yes, sir.

23 Q    Do you know if that happened?

24 A    I am not aware of the keys coming to us.

25          **MR. BRODIE:**  No further questions, Your Honor.

USA v. Ider Matos  --  Sentencing  --  6/12/2014

1          **MS. HAIRSTON:**  Nothing further, Your Honor.

2          **THE COURT:**  When you said more recent activity

3    involving the defendant, what do you mean by that?  That is the

4    period of which you felt he was not being forthcoming?

5          **THE WITNESS:**  Yes, Your Honor.  During those

6    interviews, we were giving Mr. Vazquez an opportunity to be as

7    forthcoming as possible.  As defense counsel said, it was nine

8    hours spent with Mr. Vazquez.  It was the more recent activity

9    where he was -- he offered it to us.  He was dealing recently,

10   so spring and summer of 2013, with parties in Southern

11   California where he was -- either they had approached him or he

12   had contact with them in order to transport narcotics.

13       When we gave Mr. Vazquez an opportunity to describe those

14   people in detail and where he had met them at, it just didn't

15   happen when we gave him an opportunity to point it out on a

16   map.

17         **THE COURT:**  Was he able to identify any of them?

18         **THE WITNESS:**  No, Your Honor.

19         **THE COURT:**  Was he able to identify where he had met

20   them?

21         **THE WITNESS:**  Only a vague description.  I recall it

22   being off of Interstate 10 in Southern California.

23         **THE COURT:**  And these are people other than the other

24   individual you mentioned earlier that he did identify?

25         **THE WITNESS:**  Yes, Your Honor.

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1    **THE COURT:**  Did he identify more than one individual

2  that he dealt with out there?

3    **THE WITNESS:**  Well, there were other people involved

4  with Mr. Emilio Banuelos, but as far as major suppliers in that

5  area, it would have been two by my recollection.

6    **THE COURT:**  From a law enforcement point of view, is

7  there some benefit to getting information about more current

8  transactions as opposed to those that are a little older?

9    **THE WITNESS:**  In my experience, Your Honor, that

10  would give us an opportunity to go to verify that, yes, this is

11  a person that's either a target of the investigation,

12  worthwhile to be investigated.  We wouldn't know about him

13  otherwise from a defendant like Mr. Vazquez.  We can

14  communicate that to the Court, and that would be to his

15  benefit.

16    **THE COURT:**  There is maybe some suggestion from

17  Mr. Broadie about GPS being -- following the defendant with

18  GPS.  Were you able to track what he was doing at the time when

19  you say that he was unable to identify people he met with?

20    **THE WITNESS:**  That GPS device, my understanding, had

21  been placed some time earlier in the investigation and hadn't

22  been taken off of the vehicle.  It wasn't active during that

23  time frame in 2013.

24    **THE COURT:**  What do you mean it wasn't active?

25    **THE WITNESS:**  The batteries had run out.

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1          **THE COURT:**  Okay.  Anybody else have any questions in

2    light of mine?

3          **MS. HAIRSTON:**  No, sir, Your Honor, but once the

4    agent steps down, may we approach?

5          **THE COURT:**  Yes.  Any further questions, Mr. Broadie?

6          **MR. BROADIE:**  Not at this time, Your Honor.

7          **THE COURT:**  All right.  You may step down.

8       (At 3:29 p.m., the witness was excused.)

9          **THE COURT:**  Please approach the bench.

10      (The following proceedings were had at the bench by the

11      Court and Counsel:)

12         **MS. HAIRSTON:**  Your Honor, the government would like

13    to withdraw any objection we have to the application of the

14    safety valve.  Agent Hughes is correct in all of his testimony.

15    I didn't ask him to review anything in preparation for his

16    testimony today, and he is mistaken about the 2013.  It was

17    actually 2012 is the time frame that Mr. Matos was talking

18    about.  I did not bring that interview with me, but two of the

19    other agents who are present recall that it was 2012 and not

20    2013.  So he was in no way attempting to mislead the Court.  He

21    is just simply mistaken about the time frame.

22      Also, the GPS device -- he was not here at the last

23    hearing.  He was in training.  The GPS device was returned to

24    us here in open court.  So I just ask the Court to allow the

25    government to withdraw any objection we have to the -- I

     USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1 actually wasn't objecting. I just wanted the Court to hear

2 from the agent because the agent's opinion on that particular

3 issue was problematic for him.

4          **THE COURT:** So it's your view that he is eligible for

5 the safety valve?

6          **MS. HAIRSTON:** Yes, sir. I will just err on the side

7 of the defendant and ask the Court to apply the safety valve.

8          **THE COURT:** Do you want me to give you a moment to

9 speak to the agents? And then I would like for you in open

10 court to state your position so that everybody understands.

11          **MS. HAIRSTON:** Sure.

12          **THE COURT:** Thank you. I appreciate that.

13     (End of bench conference.)

14     (Off-the-record discussion.)

15          **THE COURT:** All right.

16          **MS. HAIRSTON:** Your Honor, the government at this

17 time would withdraw any objection we would have to the safety

18 valve and ask the Court to find that the criteria set out in

19 Section 5C1.2 have been met in this case.

20          **THE COURT:** So just to be clear, the defendant

21 doesn't have more than one criminal history point, didn't use

22 violence or any credible threats of violence or possess a

23 firearm, no death or serious bodily injury, he is not an

24 organizer, leader, manager, or supervisor; and it's the

25 government's belief that not later than the time of sentencing

USA v. Ider Matos -- Sentencing -- 6/12/2014

1  he truthfully provided the government all information and

2  evidence that he had concerning the offense or offenses that

3  were part of the scheme of conduct.

4          **MS. HAIRSTON:**  Yes, sir.  And I don't want the

5  government's position in any way to be a reflection on the

6  agent's testimony other than what I corrected at the bench,

7  Your Honor.

8          **THE COURT:**  I understand.

9          **MS. HAIRSTON:**  Thank you.

10         **THE COURT:**  I won't regard it that way.

11      Anything else, Mr. Broadie?

12         **MR. BROADIE:**  No, Your Honor, not in regards to

13  objections.

14         **THE COURT:**  All right.  So the presentence report is

15  going to be amended in the following respects:

16      Paragraph 54 will be zero, and that is the 3B1.1, and the

17  calculations will have an additional two-level decrease for the

18  safety valve.  I am going to find that the defendant is

19  entitled to the protections of 3553(f) so -- for the benefits

20  of that, so there is a two-level reduction for that.  So his

21  total offense level then becomes 31, and throughout the

22  presentence report, all the other references to those will be

23  changed.

24      I am not quite sure exactly what to do with the statements

25  of fact in the presentence report insofar as the defendant has

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1  contested some of those.  I found that there is no adjustment

2  for the role enhancement.

3     Does anybody contend that I have to make any further

4  change to the various statements of fact in the presentence

5  report?

6     **MR. BROADIE:**  Not for the defendant, Your Honor.

7     **THE COURT:**  Okay.  Then I am going to adopt the

8  presentence report as amended, and that then gives us a new

9  calculation of the guidelines in the recommendation at the end.

10     The defendant's total offense level now becomes 31.  The

11  criminal history category is I.  The guideline range is 108 to

12  135.  Count One has a 10-year mandatory minimum -- however, the

13  defendant has the benefit of the safety valve -- and a maximum

14  of life.  Count One in the 14CR4-1 case has a 5-year statutory

15  maximum.  Supervised release in the 13CR337 case is 2 to 5

16  years.  In the other case, it is 1 to 3 years.  The fine range

17  is 15,000 to $10 million.  Restitution does not apply.  There

18  is a 100-dollar special assessment for each of the two counts.

19     Do the parties agree that those are the proper guideline

20  calculations in light of the rulings?

21     **MS. HAIRSTON:**  Yes, sir.

22     **MR. BROADIE:**  Yes, sir.

23     **THE COURT:**  Now, I have a note that I did not accept

24  the factual basis and plea in these cases.  Is that as to both

25  cases?  Do you recall?

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1     **MS. HAIRSTON:**  That's my recollection, Your Honor.  I

2  think we indicated we would rely on the undisputed portions of

3  the factual offense conduct in the presentence report, Your

4  Honor.  I think it's still sufficient to support the plea in

5  this case.

6     **MR. BROADIE:**  That will be our position as well.

7     **THE COURT:**  Let me back up just a minute.  Okay.  I

8  will find that the presentence report, which I've obviously now

9  read in much detail, provides an independent basis in fact that

10  contains each of the essential elements of both of these

11  convictions, and I will therefore accept the plea as to both

12  cases; and the defendant is now adjudged guilty of Count One,

13  Object One, in 13CR337 and Count One in 14CR4-1.

14     All right.  We've previously calculated the guidelines,

15  and I am adopting the presentence report as amended.  As to all

16  matters in the presentence report, I am now adopting as

17  findings of fact.

18     Having considered the guidelines, which are advisory, and

19  then considering the factors under 3553(a), I think now I will

20  hear from the parties as to what you think an appropriate

21  sentence ought to be in the case.  Mr. Broadie?

22     **MR. BROADIE:**  Thank you, Your Honor.  If it may

23  please the Court, Your Honor, I submitted a defendant

24  sentencing memorandum earlier in this case, and I won't go

25  through all the whole thing.  I will stand on that request and

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

the information in it, but I would just like to highlight a
couple of things, one of which, Your Honor -- you've heard a
lot of testimony about the involvement of Mr. Matos as well as
other individuals in and around this conspiracy.

One of the things I want to point out about Mr. Matos out
of all this, Your Honor, is that he's always maintained a
mentality of industriousness.  He's always trying to do things
to better himself, as I pointed out in this position paper, and
that of his family, so much so that everybody on the back row
from his wife, his brother, his oldest son, two friends, and
another brother all come from Miami.  They drove up for the
last sentencing.  They drove up here for the change of plea.
Every court date he's had, they supported him, which is a
testament, in my opinion, to what he means to his family and
how he's always been diligent in trying to provide for them.

I highlight in this position paper, Your Honor, that a
number of bad decisions, albeit his own, landed him in this
conspiracy; but there is an element of everything that started
off in an honorable situation for Mr. Matos.

I point those things out, Your Honor, because he is very
remorseful for his actions, so much so that he wanted to do
everything that he could to cooperate and accept responsibility
for his own actions very early in this case.  It's always been
his position in my defense of him is that, Mr. Broadie, I just
want to accept responsibility for what I have done; and I've

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

relayed that to the government, and that's how we've always
proceeded in this case.  However, he's also been very diligent
and defiant about things that he did not do or the things that
were not accurate representations of him.

In saying that, Your Honor, I will point out, as 3553
factors, the fact that he's never had any significant prison
sentence in the United States.  I did point out to what we
constitute as a political refugee in Cuba and the treatment
that he sustained as to that.  However, he has never served an
incarceration sentence, and that would have an impact on his
family.

As we argued somewhat in regards to the restitution, or
the assessment of the fine, everything that he's had,
everything that remotely had on his name on it, everything that
remotely had his wife's name on it has been taken. That's put
his family in a great, great deal of distress.  Prior to this
indictment, Your Honor, his homestead was facing foreclosure,
and that kind of gives the Court some indication that at that
time he was working and he was not making all of this money
distributing cocaine through the United States.  His house was
in foreclosure prior to him being indicted in this case.

But needless to say, Your Honor, he's always been diligent
in working.  He's always had a mind to provide jobs for the
community.  I pointed out in his sentencing memorandum his
desire to help the community, to be a pillar of the community.

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1     If I may approach, Your Honor, one of the family members

2 brought a certificate, and I will show it to Ms. Hairston, in

3 regards to things that he has done with the United States

4 Special Forces where they've used his facility as a training

5 ground.  He was given a certificate of appreciation for that.

6 Those are the kinds of things that he is proud of, Your Honor.

7     He knows that he did wrong.  His age constitutes that he

8 will be a low risk of recidivism, and we think that if the

9 Court honored a sentence that we are requesting, that you won't

10 see Mr. Matos in this court again or any other court.  I think

11 at his age, Your Honor, that any term of imprisonment will be a

12 significant punishment to deter one from future crimes, to

13 promote respect for the law, and to provide just punishment for

14 the citizens of this crime.  As such, we'll stand by the

15 request that we made in our sentencing memo and ask the Court

16 to sentence him accordingly.

17          **THE COURT:**  This doesn't have any date on it.

18          **MR. BROADIE:**  That is correct, Your Honor.  That is

19 how I received it.  I am not certain as to the date in which

20 this occurred, but I can tell the Court that it was in the

21 Liberty area.  So I would presume it was sometime in 2009,

22 2010.  Thank you, Your Honor.

23          **THE COURT:**  Thank you.  Ms. Hairston?

24          **MS. HAIRSTON:**  Your Honor, obviously, Mr. Matos did

25 work, and he did have some legitimate employment.  However,

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1 when he chose to become involved in the drug trafficking

2 business, he did so at a high level; and a lot of cocaine was

3 brought into this district, and it was brought in all the way

4 across the country.  Money was transported back across the

5 country, and Mr. Matos benefited from that.

6     In this case, Your Honor, this is not a situation where it

7 was a one-time career.  This was repeated activity.  It was

8 activity that was engaged in knowingly.

9         **THE COURT:**  How is he accountable for 23 kilos?  It

10 seems to me there was a lot more cocaine.

11         **MS. HAIRSTON:**  Your Honor, it's a matter of one

12 defendant -- one witness says this amount.  Another witnesses

13 says that amount.  Recollections differ, and it's always been

14 my position to err on the side of caution and to give a

15 defendant the benefit of the doubt.

16     However, as the Court has seen, and even as the defendant

17 has proffered, in some of these debriefings many more kilograms

18 of cocaine than that and the cash that was generated from --

19 the proceeds that were generated from that show that this was

20 significant drug activity with cocaine being brought into the

21 Middle District of North Carolina.

22     So in looking just at the nature and circumstances of the

23 offense, Your Honor, this was not low-level drug trafficking.

24 It was not one time.  It was repeated activity that was set up,

25 knowingly engaged in for the purpose of making money.

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1      And we would ask the Court in that regard, in looking

2  at -- while there are many factors in mitigation for Mr. Matos

3  under 3553(a), in looking at him and his background, the huge

4  aggravating factor from the government's position is the scale

5  of the drug trafficking that took place here.

6      We would ask the Court at a minimum to sentence him at the

7  middle of the range that the Court has announced, if not at the

8  higher end, because he did -- it's almost, Your Honor, more

9  aggravating for someone who has legitimate employment, who is,

10 as he holds himself out to be, a legitimate businessmen, who

11 then becomes engaged in this activity.  He's not someone who

12 was struggling to make ends meet and to feed his family.  It

13 was solely for the economic benefit that was derived; and for

14 that reason, Your Honor, we would ask the Court to sentence him

15 at a minimum at the middle of the range if not at the high end

16 of the range.

17         **THE COURT:**  What is the government's position as to

18 how long Mr. Matos was involved in this conspiracy?

19         **MS. HAIRSTON:**  Your Honor, I believe that we have

20 been looking at Mr. Matos -- the investigation began in or

21 around 2009, but I think the activity may have been before

22 that.

23         **THE COURT:**  As I recall, one of the two co-defendants

24 said that we were selling him drugs personally back in 2003, if

25 I'm not mistaken.

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1    **MS. HAIRSTON:** That's what Agent Hughes just pointed

2  out to me, Your Honor. I think any contact with illegal

3  substances may have begun back in 2003, but most certainly,

4  this heavy trafficking activity began in or around 2009, Your

5  Honor, and it was significant as well the number of -- as well

6  as the amount of money generated, Your Honor.

7    **THE COURT:** All right. Mr. Matos, sir, is there

8  anything you would like to say in your own behalf before I make

9  a decision as to a sentence? You have no obligation to speak.

10 You enjoy the right under the United States Constitution to

11 remain silent. If you exercise that right, I will not hold

12 that against you. On the other hand, I have the duty of

13 determining a sentence in your case. I am about to do that in

14 a moment. If you would like to be heard before I do that, now

15 would be the appropriate time to do so.

16   **THE DEFENDANT:** I would like to thank you for the

17 opportunity to speak. I have accepted responsibility, first of

18 all, because I know that I am guilty. The documents explain

19 when I got involved in this. It wasn't 2009. I have been

20 involved since 1999 through a DEA agent.

21   I again thank you for the opportunity. I was involved in

22 2009, only in 2009. I have opened my heart up from the very

23 beginning to tell the truth and nothing but the truth where I

24 went, who I speak with, who I met with. If there was any

25 missing detail, if there was any missing detail, it was because

USA v. Ider Matos -- Sentencing -- 6/12/2014

1  it wasn't relevant.

2      I thank the DEA, the IRS because they have been very

3  respectful.  I thank the prosecuting attorney who has been very

4  respectful, and I thank Mr. Broadie.  I thank him for helping

5  me to cross the bridge.

6      The only thing I can add is that I never voluntarily got

7  involved in this business, nor did I make money.  What I

8  gained, what I earned through this activity, I invested it in

9  the community center.

10      I thank you, thank you very much, and I apologize to my

11  family, to my wife, and to this country, which has opened its

12  doors to me.  Thank you.

13          **THE COURT:**  All right.  Let me ask Mr. Broadie and

14  Ms. Hairston to step up here.

15      (The following proceedings were had at the bench by the

16      Court and Counsel:)

17          **THE COURT:**  Do you want to be heard at all as to

18  whether any part of his allocution was going back on his

19  admissions in this case?

20          **MS. HAIRSTON:**  Your Honor, Mr. Matos is difficult in

21  his presentations, and I am trying to give him the benefit of

22  the doubt still; and I quite frankly don't know why, but I

23  still am.

24      I sat through most of those nine hours with him, and what

25  he just said to the Court is the way he started out with us.

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1  However, he then moved into discussing significant amounts of

2  drug trafficking.  So his characterization of not doing it --

3  did he say not voluntarily?

4          THE COURT:  That's what he said.

5          MR. BROADIE:  Your Honor, I want to give him, of

6  course, the benefit of the doubt; but when I am speaking with

7  him, I think that maybe he is trying to say something and using

8  the wrong words or not appropriately.

9          THE COURT:  He's pretty articulate.

10          MR. BROADIE:  I think it's one of those situations

11  where his articulation -- maybe he's speaking faster than he is

12  thinking.  I think that --

13          THE COURT:  What is the -- I thought in the last

14  hearing the government claimed it had no knowledge of him

15  working with DEA?

16          MS. HAIRSTON:  It wasn't a DEA agent, Your Honor.  I

17  asked the other officers, the agents who were here, after the

18  hearing.  It was a local officer whose name is Bobby Silvey,

19  who was a local officer down in either Chatham County or some

20  neighboring county, Randolph County.

21          THE COURT:  Was the defendant, in fact, assisting

22  some law enforcement?

23          MS. HAIRSTON:  According to Mr. Griffin, who is

24  retired IRS and who had some knowledge of the earlier

25  investigation, I think that Mr. Silvey did approach Mr. Matos

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1  about providing information, and he probably did provide some

2  information at that time.  However, he then became involved in

3  the drug trafficking.  His position is that he only became

4  involved because he was cooperating.  However, the

5  investigators' position is, and it turned out to be, that he

6  continued to traffic in drugs.

7       **MR. BROADIE:**  Your Honor, I don't want to get into

8  testifying like we did last time, but I've had an extensive

9  amount of time to talk to him.  I think his position is more

10  that he got into this and got deeper into it and didn't know

11  how to get out, so not necessarily because of the crux of

12  him --

13       **THE COURT:**  I appreciate that.  I was really most

14  interested in whether there was some factual support for his

15  notion that he was working with somebody in law enforcement.

16       **MS. HAIRSTON:**  There was initially, Your Honor.

17       **THE COURT:**  Okay.

18       **MS. HAIRSTON:**  However, not during the bulk of the

19  investigation that gave rise to these charges.

20       **THE COURT:**  Thank you.  I appreciate it.

21     (End of bench conference.)

22       **THE COURT:**  All right.  I have taken the guidelines

23  into account.  They are advisory.  The guideline range now is

24  108 to 135 months.  I have considered all the 3553(a) factors

25  in determining a sentence in the case, and the sentence that I

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1   am going to impose is that which, in my view, is sufficient but

2   no greater than necessary to meet the sentencing objectives of

3   Section 3553(a) as well as any sentencing objectives that may

4   apply as well under the advisory guidelines.

5       I am going to impose 130 months in this case. I note that

6   is within the guideline range, and here are the reasons:

7       I understand the defendant has a request that I sentence

8   him to 72 months as a variance. I have considered that, and

9   for the record, I am going to decline to do that.

10      When looking at the nature and circumstances of the

11  offense, this was an extensive operation that covered a

12  significant period of time. The defendant was involved in a

13  fairly large conspiracy. I was troubled by whether there was

14  sufficient evidence to show that the defendant was managing and

15  supervising others, but there is no doubt that the defendant

16  operated the stash house, that others were at least working

17  with him to hide the drugs, and that he was working with the

18  others to distribute the drugs. The defendant himself is

19  accountable for 23 kilos of cocaine, which appears to be a very

20  conservative estimate on this record as to the defendant's

21  involvement here. There is evidence that at one point in time

22  there was $1 million in proceeds simply available.

23      It was a large-scale operation, and I have considered the

24  need for the sentence to reflect the seriousness of the

25  offense, promote respect for the law, and provide just

USA v. Ider Matos -- Sentencing -- 6/12/2014

punishment, again noting the length of the operation and the
extensiveness. There were a number of people involved, as
noted in the presentence report and the evidence the government
has presented.

The defendant's 51 years old. So I have taken his age
into account. He has a college education. He has permanent
resident status. It's a shame he got involved in this
operation. He had significant business operations. I give him
credit for having otherwise legitimate sources of income. I am
concerned about affording adequate deterrence, not only to the
defendant, but to others. As to the defendant, because this
operation went on for some time. As to others, because of the
extensive nature of the operation, and the sentence imposed has
to be significant to deter others from engaging in like
activity, particularly given the financial rewards that are
available.

As you know, Mr. Matos, there is a significant ripple
effect that your illegal conduct causes throughout the
community, not only within the law enforcement community, but
within the safety -- public safety for everyone else. It
affects economically others because these are illegal funds,
and it was just a significant amount of damage done to the
community by trafficking in cocaine.

So, as I've said, for those reasons, I am going to impose
130 months.

USA v. Ider Matos -- Sentencing -- 6/12/2014

1      Mr. Matos, if you'll stand, it is ordered that you be

2  committed to the custody of the United States Bureau of Prisons

3  for a term of 130 months.  That's 130 months in Case 13CR337-1,

4  Count One, Object One, and 60 months in Case 14CR4-1 to run

5  currently with Case 13CR337.

6      I am also imposing 5 years of supervised release in the

7  13CR337 case and 3 years in the 14CR4-1 case to run currently

8  with each other.

9      You are ordered to pay a special assessment of $100 on

10 each of the two counts due and payable immediately.  If you

11 cannot immediately comply, I do recommend that you participate

12 in the Inmate Financial Responsibility Program.

13     Now, there is the question about whether the defendant

14 should be ordered to pay a fine.  It does appear to me that the

15 truck that was one of the significant assets has been seized,

16 and I do have a question of whether the defendant has already

17 had some of the assets, which would otherwise put him in a

18 position to pay a fine, seized.

19     What is your position, Ms. Hairston?

20         **MS. HAIRSTON:**  Yes, sir.  Your Honor, I just checked

21 with Agent Purgason.  The Court is correct.  The

22 tractor-trailer has been seized and at least two of the real

23 properties are subject to, I think, some type of forfeiture

24 proceeding, Your Honor.  The residence in Miami is not.  The

25 residence in Miami is not subject to any forfeiture

        USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1  proceedings, Your Honor, but --

2        **THE COURT:**  Why is that?

3        **MS. HAIRSTON:**  I believe it's in foreclosure.

4        **MR. BROADIE:**  It's in a foreclosure, Your Honor.

5        **MS. HAIRSTON:**  I believe the Liberty Road, Your

6  Honor, that's listed under other expenses is subject to

7  forfeiture on page 22.

8        **THE COURT:**  It appears to me that since the truck is

9  seized and there are mortgages on real estate, that he has a

10  negative net worth.  Is that, in fact, the case?

11        **MS. HAIRSTON:**  If it's not a negative net worth, Your

12  Honor, it would be close to it at this point, I guess.

13        **THE COURT:**  Okay.  You all have a seat a minute.

14  Mr. Parrish?

15      (Off-the-record discussion.)

16        **THE COURT:**  Ms. Hairston, page 21 of the presentence

17  report, the business property at 421 Havana in Liberty, has a

18  footnote that says the defendant reported the business property

19  located at 10228 Old Liberty Road in Liberty had a current

20  market value of half a million dollars and a tax appraised

21  value of 52,800.  Has that been seized?

22      (Off-the-record discussion.)

23        **MS. HAIRSTON:**  Your Honor, according to Agent

24  Purgason, there is a mortgage on that property of around

25  $300,000 with a value of 325.  There is a lis pendens on the

Case 1:13-cr-00337-TDS  Document 86  Filed 09/10/14  Page 38 of 43

1  property and a negotiated sale in the works on that.

2         THE COURT:  So are you telling me there is really no

3  equity?

4         MS. HAIRSTON:  According to Agent Purgason, there is

5  very little equity in that property, Your Honor.

6         THE COURT:  All right.  I am not going to impose a

7  fine.  It looks like the defendant is not a position to pay a

8  fine.  His truck has been seized, about $100,000 or so, it

9  looks like -- 92,000-dollar truck has been seized.

10     All right.  Supervised release -- in addition to the

11  standard conditions of supervised release, I am going to order

12  that the defendant provide any requested financial information

13  to his probation officer, that he submit to substance abuse

14  testing at any time as directed by the officer in view of his

15  prior cocaine use, that the defendant shall cooperatively

16  participate in a substance abuse treatment program, which may

17  include drug testing and inpatient and residential treatment,

18  and to pay for treatment services as directed by the probation

19  officer.  During the course of treatment, he shall abstain from

20  the use of any alcoholic beverages.

21     The defendant shall submit his person, residence, office,

22  vehicle, or any property that's under his control to a

23  warrantless search to be conducted by a U.S. probation officer

24  at a reasonable time and in a reasonable manner based upon

25  reasonable suspicion of contraband or evidence of a violation

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

```
1    of a condition of release.  Failure to submit to such a search
2    may be grounds for revocation, and the defendant shall warn any
3    residents that the premises may be subject to searches.
4        Upon completion of the custody sentence, the defendant
5    shall surrender to a duly authorized Immigration and Customs
6    Enforcement official in accordance with established procedures
7    provided by the Immigration and Naturalization Act, Title 8,
8    U.S. Code, Section 1101.
9        There's been no discussion of that provision, but I
10   presume that the defendant has accepted that; is that right?
11           MR. BROADIE:  That's correct, Your Honor.
12           THE COURT:  If he is ordered deported, the defendant
13   shall remain outside the United States during the term of his
14   supervision and shall not reenter the United States without the
15   permission of the U.S. Attorney General or the Secretary of the
16   Department of Homeland Security.
17       Anything further I need to address, Mr. Broadie, from the
18   defendant's point of view?
19           MR. BROADIE:  No, Your Honor.
20           THE COURT:  Was he named in other counts?
21           MR. BROADIE:  I do apologize, Your Honor.  Yes, Your
22   Honor.  In 13CR337-1, he is named in other counts.  We
23   respectfully move that those counts be dismissed.
24           THE COURT:  Pursuant to the plea agreement and
25   without any objection from the government, the remaining counts
```

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1  against the defendant are hereby ordered dismissed.

2  **MS. HAIRSTON:**  Your Honor, would the Court enter a

3  destruction order for any drugs seized during the course of

4  this investigation in the event that they are being retained by

5  some of the local agencies who assisted in this investigation?

6  **THE COURT:**  Yes.  Are there any other defendants?

7  **MS. HAIRSTON:**  There's just one, Your Honor, and

8  there is a plea agreement outstanding for Mr. Amadeo Ponce

9  Zagada.

10  **THE COURT:**  So should I enter the order at the

11  expiration of time for appeal of all the cases?

12  **MS. HAIRSTON:**  As to all defendants, yes, Your Honor.

13  **THE COURT:**  All right.  That will be so ordered.

14  Now, have you had an opportunity to speak with Mr. Matos

15  about any rights of appeal that he may have?

16  **MR. BROADIE:**  Yes, Your Honor.

17  **THE COURT:**  Please make sure he is aware if he

18  chooses to file notice of appeal that he must do so in writing

19  within 14 days of the entry of the Court's judgment in this

20  case.  If he cannot afford the cost of his appeal, he can ask

21  the Fourth Circuit to waive the cost of the appeal.

22  Mr. Matos, good luck to you, sir.

23  All right.  Anything further from the government today?

24  **MS. HAIRSTON:**  No, sir.

25  **THE COURT:**  We'll be in recess.  You all have a good

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1  afternoon.

2      (END OF PROCEEDINGS AT 4:10 P.M.)

3

4                              ******

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

USA v. Ider Matos  -- Sentencing  -- 6/12/2014

1  UNITED STATES DISTRICT COURT

2  MIDDLE DISTRICT OF NORTH CAROLINA

3  CERTIFICATE OF REPORTER

4

5

6          I,  Briana L. Nesbit, Official Court Reporter,

7  certify that the foregoing transcript is a true and correct

8  transcript of the proceedings in the above-entitled matter.

9

10          Dated this 10th day of September 2014.

11

12

13          _____
                Briana L. Nesbit, RPR
14              Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25

USA v. Ider Matos  -- Sentencing  -- 6/12/2014